**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NICOLE SCHNEYDER,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 06-4986** |
| | : | |
| **GINA SMITH,** | : | |
| **Defendant and Third-Party Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LAURA DAVIS, ESQUIRE, and THE** | : | |
| **DEFENDER ASSOCIATION OF** | : | |
| **PHILADELPHIA,** | : | |
| **Third-Party Defendants.** | : | |

**DuBOIS, J.**                                                         **April 26, 2010**

**M E M O R A N D U M**

I.   Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.  Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.   Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     A.   Qualified Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          1.   Plaintiff's Fourth Amendment Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . 11
               a.   Plaintiff Has a Clearly Established Constitutional Right Under the
                    Fourth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
                    i.    Detention As a Material Witness Is a Seizure Under the
                          Fourth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
                    ii.   Detention As a Material Witness Requires Probable Cause
                          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
               b.   Plaintiff Alleges Facts Sufficient to Establish a Violation of Her
                    Fourth Amendment Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          2.   Plaintiff's Fourteenth Amendment Claim. . . . . . . . . . . . . . . . . . . . . . . . 20

3.       Plaintiff's Argument That Defendant Was Obligated by Court Order to Inform Judge of Trial Continuance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

B.     Absolute Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

     1.       Law of the Case Doctrine. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

     2.       Defendant's Argument That the Third Circuit's Opinion in Schneyder Does Not Control This Case Because of Its Different Procedural Posture Is Rejected. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

     3.       Defendant's Argument That Van de Kamp v. Goldstein Constitutes a Change in the Controlling Law Is Rejected . . . . . . . . . . . . . . . . . . . . . . 26

C.     Availability of Pretrial Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

     1.       Plaintiff's Argument That Defendant Has Waived an Appeal on Qualified Immunity is Rejected. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

     2.       Plaintiff's Request That the Court Certify Any Appeal as Frivolous Is Rejected. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

VI.     Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## I.     Introduction

This case arises out of the detention of plaintiff Nicole Schneyder as a material witness in a Pennsylvania homicide prosecution, Commonwealth v. Michael Overby (CP No. 9501-0580 2/3).  In the Complaint, plaintiff asserts a cause of action under 42 U.S.C. § 1983 against defendant Gina Smith, Esq., who was the prosecutor in the Overby homicide case.  Specifically, plaintiff alleges in a two-count Complaint that she was detained as a material witness without probable cause in violation of the Fourth and Fourteenth Amendments of the United States Constitution (Count One), and that her detention deprived her of liberty without due process of law in violation of the Fourteenth Amendment (Count Two).

Presently before the Court is defendant Smith's Second Amended Motion for Summary Judgment ("Motion").  For the reasons set forth below, defendant's Motion is denied.

**II.      Factual Background**

The relevant facts of this case are stated in detail in the Court's Memorandum and Order of January 9, 2007, Schneyder v. Smith, No. 06-CV-4986, 2007 WL 119955, at *1-*2 (E.D. Pa. Jan. 9, 2007), and in the United States Court of Appeals for the Third Circuit's Precedential Opinion of August 4, 2008, Schneyder v. Smith, 538 F.3d 202, 205-08 (3d Cir. 2008).[1] Accordingly, this Memorandum sets forth only the factual and procedural background necessary to resolve the Motion presently before the Court. Unless noted otherwise, the facts are undisputed.

Plaintiff "was a reluctant but essential witness in three attempts by the Commonwealth of Pennsylvania to convict Michael Overby of first-degree murder." Id. at 205. During the first two trials against Overby, plaintiff did not appear, leading the court to declare her unavailable and admit her sworn statement into evidence. Id. Defendant Smith, Philadelphia Assistant District Attorney, who was assigned to prosecute Overby for the third time,[2] secured a material witness warrant for plaintiff's arrest on January 26, 2005, which was signed by Judge Rayford Means of the Court of Common Pleas for Philadelphia County. Schneyder, 2007 WL 119955, at *1.

_____

[1] The Third Circuit consolidated two cases on appeal – the instant case, Schneyder v. Smith (No. 07-CV-1490), and Odd v. Malone (No. 06-CV-4287), which concerned a prosecutor's failure to notify appropriate authorities that a material witness remained incarcerated after the case had been dismissed. The Third Circuit's opinion is published in the Federal Reporter, Third Series, under both case titles. Odd v. Malone; Schneyder v. Smith, 538 F.3d 202 (3d Cir. 2008). However, for the purposes of this Memorandum, the Court refers to the consolidated cases heard on appeal as Schneyder v. Smith.

[2] The jury was unable to reach a verdict during the first trial. Schneyder, 2007 WL 119955, at *1. The second jury convicted Overby of first-degree murder and sentenced him to death, but the Pennsylvania Supreme Court overturned the conviction and granted Overby a new trial. Id.

Before the hearing on the material witness petition on January 27, 2005, Judge Means met with defendant and public defender Laura Davis, who was representing plaintiff for the purposes of the hearing, in his robing room. (Mot. 5, ¶11.) Among other things, Judge Means instructed defendant to inform him if the case was continued, and would not commence as planned on February 2, 2005.[3] (Id.) At the hearing, Judge Means found plaintiff to be a "flight risk" and set bail for her at $300,000. (Bail Hr'g Tr., Jan. 27, 2005, Ex. 1 to Mot. 19:5-8, 21:8.) Plaintiff did not post bail and was detained. Schneyder, 538 F.3d at 205; Schneyder, 2007 WL 119955, at *1.

At the bail hearing, Judge Means articulated his dislike for "setting bail on people who are not accused of a crime." (Bail Hr'g Tr. 21:12-13.) In open court, he told plaintiff, "[i]f the case breaks down, let me know early and I'll let you out." He continued,

> I only intend to keep you on this bail until you testify or the trial is concluded. If you did have it on February 2nd and the Commonwealth says, we don't need you anymore, we're done with you, okay, then I will want them to come back to me and say, look, we don't have any need for her. If they make a decision at some point on January 31st, we changed our mind, we don't even need this lady, come back to me so I can bring her down and remove this.

(Id. 22:1-11.) Finally, Judge Means set a status date of February 14, 2005 – two days after the trial was to be concluded – for the parties "to come down and see me" in case the trial was still ongoing. (Id. 21:4-7.)

On February 2, 2005, the Overby trial was continued until May 25, 2005. Schneyder, 1007 WL 119955, at *1. However, defendant never informed Judge Means that the trial was

---

[3] Defendant concedes this fact only for the purposes of this Motion. (Mot. 5, ¶ 11.)

continued,[4] and plaintiff was not released.  Id.  Plaintiff alleges that "[b]etween February 2, 2005 . . . and March 21, when Judge Means finally released plaintiff, [her] mother and sister telephoned the defendant approximately 25 times . . . inquiring why plaintiff was still in jail and wondering when she would be released, explaining that plaintiff's father was gravely ill, and asking the defendant to call them back to discuss these matters."  (Pl.'s Resp. 32; see Decl. of Mary-Anne Schneyder, Ex. 21 to Pl.'s Resp.; Decl. of Tamyra Schneyder, Ex. 22 to Pl.'s Resp.)

Upon the death of plaintiff's father on February 28, 2005, plaintiff's sister hired attorney Paul Conway, who obtained a court order allowing plaintiff to attend, for only a few minutes, her father's funeral.  Schneyder, 1007 WL 119955, at *2; Schneyder, 538 F.3d at 206.  Thereafter, Conway learned that Judge Means had instructed defendant to notify him of the Overby continuance.  Schneyder, 2007 WL 119955, at *2; Schneyder, 538 F.3d at 206.  Conway subsequently informed Judge Means of the continuance.  Schneyder, 2007 WL 119955, at *2; Schneyder, 538 F.3d at 206.  Judge Means immediately ordered plaintiff's release, and plaintiff was released on March 21, 2005, "54 days after she was first detained and 48 days after the Overby case was continued."  Schneyder, 2007 WL 119955, at *2; Schneyder, 538 F.3d at 206.

## III.    Procedural History

On November 13, 2006, plaintiff filed a three-count Complaint against defendants Smith and the Office of the District Attorney of Philadelphia ("ODA").  In Count One, plaintiff alleged against both defendants detention without probable cause in violation of the Fourth and

---

[4] Defendant concedes this fact only for the purposes of this Motion.  (Mot. 7, ¶ 17.) Smith testified in her deposition that "she appeared in Judge Means's courtroom between February 2nd and February 14th and notified him of the continuance, and that she also appeared in his courtroom on February 14th and spoke to his staff" about the continuance.  (Id. at 7 n. 3.)

Fourteenth Amendments under 42 U.S.C. § 1983. (Compl. ¶¶ 31-37.) Count One also alleged

that the ODA was liable for its failure to supervise defendant Smith and monitor plaintiff's status

as a detained witness. (Id. ¶ 34.) In Counts Two and Three, plaintiff alleged pendent state law

claims of false imprisonment and intentional infliction of emotional distress against both

defendants. (Id. ¶¶ 38-41.)

On December 12, 2006, defendants filed a Motion to Dismiss Plaintiff's Complaint

Pursuant to Federal Rule of Civil Procedure 12(b)(6). By Memorandum and Order of January 9,

2007, this Court: (1) granted defendants' motion with regard to plaintiff's § 1983 claim against

defendant Smith on the ground the defendant Smith was entitled to absolute immunity;[5] (2)

denied defendants' motion with regard to plaintiff's § 1983 claim against defendant ODA; and

(3) granted defendants' motion with regard to plaintiff's state law claims against both defendants

on the ground that defendant Smith was absolutely immune from liability for state law claims

and that defendant ODA was immune as a municipal agency under § 8451 of the Tort Claims

Act. Schneyder, 2007 WL 119955, at *2-*7.

Plaintiff filed a Motion to Reconsider Decision Granting Defendant's Motion to Dismiss

as to Individual Defendant Gina Smith on January 12, 2007, which the Court denied by Order

dated January 23, 2007. Schneyder v. Smith, No. 06-CV-4986 (E.D. Pa. Jan. 23, 2007).

---

[5] Specifically, the Court held that absolute immunity applied because "[defendant's] failure to inform Judge Means that the Overby trial was continued was 'intimately associated with the judicial phase of the criminal process.'" Schneyder, 2007 WL 119955, at *3 (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)). That ruling was based on the Court's conclusion that defendant was acting in an advocacy capacity and that "[p]laintiff cannot avoid this outcome 'by carving up an act of prosecutorial discretion into different elements and labeling one or more as purely administrative.'" Id. (quoting Robinson v. Gillespie, No. 02-4136-SAC, 2003 WL 21667167, at *6 (D. Kan. June 4, 2003)).

Plaintiffs then filed a Motion for Leave of Court to Withdraw Claim Against Office of District Attorney, seeking to withdraw her remaining § 1983 claim against the ODA in order to appeal the Court's decision on the Motion to Dismiss. The Court granted plaintiff's Motion for Leave to Withdraw and dismissed plaintiff's claims against ODA with prejudice. Schneyder v. Smith, No. 06-CV-4986 (E.D. Pa. Feb. 9, 2007).

Plaintiff appealed this Court's Memorandum and Order of January 9, 2007, on the issue whether defendant Smith was entitled to absolute prosecutorial immunity for her failure to report the Overby continuance to Judge Means. Schneyder, 538 F.3d at 205. The Third Circuit reversed and remanded, concluding that absolute prosecutorial immunity did not extend to defendant Smith's omission because her obligation to report to Judge Means was an administrative, non-discretionary task. Id. at 217.

On October 21, 2008, when the case was before this Court on remand, defendant filed a third-party complaint against Laura Davis, the Assistant Public Defender appointed by Judge Means to represent plaintiff as a material witness in the Overby case, and the Defender Association of Philadelphia ("Defender Association"). (Third-Party Compl. ¶¶ 28-37.)

On December 9, 2008, Defendant Smith sought leave to file a motion for summary judgment on the issue of qualified immunity before completion of discovery. By Order dated December 9, 2008, the Court granted that request and directed that the motion for summary judgment on the issue of qualified immunity be filed on or before December 17, 2008. Schneyder v. Smith, No. 06-CV-4986 (E.D. Pa. Dec. 9, 2008). In that Order, the Court also provided plaintiff an opportunity to request depositions or other discovery before responding to the motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(f)(2). Id. ¶ 2.

On December 17, 2008, defendant filed a Motion for Summary Judgment, or in the Alternative, for Judgment on the Pleadings. In responding to this Motion for Summary Judgment, plaintiff stated that she required discovery in order to address the qualified immunity issue. The Court concluded that limited discovery was appropriate, and by Order dated April 20, 2009, the Court denied without prejudice defendant's Motion for Summary Judgment and provided that defendant could file an amended motion for summary judgment after completion of limited discovery on the issue of qualified immunity on or before July 20, 2009. Schneyder v. Smith, No. 06-CV-4986, ¶¶ 1-3 (Doc. No. 48) (E.D. Pa. Apr. 20, 2009).

On April 2, 2009, defendant filed a Supplemental Motion for Summary Judgment based on the issue of absolute immunity. Plaintiff responded to that Motion on April 13, 2009, and defendant replied on April 17, 2009. Thereafter, defendant requested that the Court defer ruling on the Supplemental Motion until it ruled on the amended motion for summary judgment on the issue of qualified immunity. By Order dated April 20, 2009, the Court granted this request. Schneyder v. Smith, No. 06-CV-4986 (Doc. No. 49) (E.D. Pa. Apr. 20, 2009).

After the completion of discovery on the issue of qualified immunity, defendant filed an Amended Motion for Summary Judgment on September 11, 2009, which argued that defendant was protected from liability by both qualified and absolute immunity. Plaintiff responded to the Motion on September 24, 2009, and also filed on that date a Motion for Leave Under Rule 15 of the Federal Rules of Civil Procedure to Amend Complaint to Add New Claim of Fourteenth Amendment Violation.

By Order of October 8, 2009, the Court granted plaintiff's Motion for Leave to Amend Complaint, Schneyder v. Smith, No. 06-CV-4986 (E.D. Pa. Oct. 8, 2009). Thereafter, plaintiff

filed a First Amended Complaint on October 9, 2009, and a Second Amended Complaint on

October 13, 2009,[6] which alleges that she was detained as a material witness without probable

cause in violation of the Fourth and Fourteenth Amendments of the United States Constitution

(Count One), and that her detention deprived her of liberty without due process of law in

violation of the Fourteenth Amendment (Count Two).  (2d Am. Compl. ¶¶ 30, 32.).  As a result

of the filing of the First Amended Complaint, the Court denied as moot Defendant's

Supplemental Motion for Summary Judgment on the issue of absolute immunity and Defendant's

Amended Motion for Summary Judgment on the issue of absolute and qualified immunity.

Schneyder v. Smith, No. 06-CV-4986 (E.D. Pa. Oct. 9, 2009).

        Presently before the Court is defendant's Second Amended Motion for Summary

Judgment, filed on October 28, 2009, which addresses both absolute and qualified immunity.

Plaintiff responded on November 5, 2009, defendant replied on December 7, 2009, and plaintiff

filed a sur-reply on December 14, 2009.

## IV.    Legal Standard

        In considering a motion for summary judgment, "the court is required to examine the

evidence of record in the light most favorable to the party opposing summary judgment, and

resolve all reasonable inferences in that party's favor."  Wishkin v. Potter, 476 F.3d 180, 184 (3d

Cir. 2007).  After this examination, a court should grant summary judgment if "the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

---

        [6] The Court notes that plaintiff titled the complaint filed on October 13, 2009, "First
Amended Complaint."  However, because it is actually a second amended complaint, to avoid
any confusion the Court will refer to it as plaintiff's Second Amended Complaint in this
Memorandum.

as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). There can be no genuine issue where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322; see also In re IKON Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002) ("Only evidence sufficient to convince a reasonable factfinder to find all of the elements of the prima facie case merits consideration beyond the Rule 56 stage." (internal quotation marks omitted)).  In order to be sufficient, the evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance."  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  Where the evidence presented does not meet this threshold, "the plain language of Rule 56(c) mandates the entry of summary judgment."  Celotex, 477 U.S. at 322.

## V.  Discussion

In her Second Amended Motion for Summary Judgment, defendant argues that she is protected from plaintiff's suit by both qualified and absolute immunity flowing from her position as a prosecutor.  The Court addresses and rejects each of these defenses in turn.  In the last section of this Memorandum, the Court considers and denies plaintiff's request to consider as waived, or in the alternative certify as "frivolous," any pretrial appeal on the issue of immunity.

## A.     Qualified Immunity

The doctrine of qualified immunity provides that government officials, including prosecutors, are immune from suits for civil damages under 42 U.S.C. § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Determining whether the defendants are entitled to qualified immunity requires two inquiries, which can be taken in either order.  Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).  The first is "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; the second is "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  Id. at 816 (internal citations omitted).

For the reasons stated below, the Court concludes that plaintiff has satisfied the test as set out in Harlow and Pearson, and thus rejects defendant's qualified immunity claim.

### 1.     Plaintiff's Fourth Amendment Claim

The Court will first consider plaintiff's claim that defendant's failure to notify Judge Means of the trial continuance constitutes detention without probable cause in violation of the Fourth Amendment.  (2d Am. Compl. ¶ 30.)  In this section, the Court will discuss whether a clearly established constitutional right existed at the time of defendant's conduct that would protect plaintiff from detention as a material witness without probable cause.  Second, the Court will determine whether plaintiff has alleged facts sufficient to establish that defendant's failure to notify Judge Means violated her constitutional rights.

### a. Plaintiff Has a Clearly Established Constitutional Right Under the Fourth Amendment

The Court will first address the second inquiry under Pearson – "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." 129 S. Ct. at 816. Defendant argues that plaintiff "is unable to demonstrate that [defendant]'s conduct implicated, much less violated, a clearly established Fourth Amendment right under the circumstances of this case." (Mot. 15.)  The Court disagrees, and concludes that plaintiff had a clearly established constitutional right under the Fourth Amendment not to be detained without probable cause.

### i. Detention As a Material Witness Is a Seizure Under the Fourth Amendment

Defendant argues that "[t]he Fourth Amendment speaks in terms of 'seizures,' not detentions," and thus does not extend to plaintiff's detention as a material witness.[7]  (Mot. 17.) In support of this claim, defendant proposes that "[a] seizure is a single act, and not a continuous fact," (Mot. 17); California v. Hodari D., 499 U.S. 621, 625 (1991) (quoting Thompson v. Whitman, 18 Wall. 457, 471 (1874)), and that "the limits of Fourth Amendment protection relate to the boundary between arrest and pre-trial detention," Torres v. McLaughlin, 163 F.3d 169, 174 (3d Cir. 1998).  However, a closer examination of both Hodari D. and Torres reveals that neither supports defendant's proposition that plaintiff was beyond the scope of Fourth Amendment protections.

---

[7] The Fourth Amendment states, "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.

In Hodari D., the Supreme Court determined that a suspect fleeing from police custody "was not seized until he was tackled" – and thus that seizure was "not a continuous fact" present during Hodari's flight. 499 U.S. at 625, 629. However, the point at which seizure begins is not an issue in this case; rather, the question is how long it extends between arrest and trial.

As to when a seizure ends, the Third Circuit made clear in United States v. Johnstone, 107 F.3d 200 (3d Cir. 1997), that "a 'seizure' can be a process, a kind of continuum, and is not necessarily a discrete moment of initial restraint." Id. at 206. Torres, decided a year after Johnstone, addressed one aspect of the "difficult question" as to "when [] seizure ends and Fourth Amendment protections no longer apply." 163 F.3d at 174. In that case, which involved a malicious prosecution claim, the Third Circuit determined that Fourth Amendment seizure principles do not extend to post-trial incarceration. Id. In reaching this decision the Third Circuit stated that "the limits of Fourth Amendment protection relate to the boundary between arrest and pre-trial detention," but recognized that "there may be some circumstances during pre-trial detention that implicate Fourth Amendment rights." Id.

Another Third Circuit opinion, Gallo v. City of Philadelphia, 161 F.3d 217 (3d Cir. 1998), clarifies in which "circumstances" Fourth Amendment rights may extend to the pretrial period. That case involved whether a plaintiff awaiting criminal trial had been seized even though he was not kept in pretrial custody. The Gallo court determined that "the combination of [pretrial] restrictions imposed upon Gallo" – which included a $10,000 bond, attendance at court hearings, weekly contact with Pretrial Services, and a prohibition on traveling outside of New Jersey and Pennsylvania – "because they intentionally limited his liberty, constituted a seizure." 161 F.3d at 222, 225. DiBella v. Borough of Beachwood, 407 F.3d 599 (3d Cir. 2005), later

reinforced that "[p]retrial custody and some onerous types of pretrial non-custodial restrictions constitute a Fourth Amendment seizure."  407 F.3d at 603.[8]

Reading Gallo and Torres together, the pretrial restrictions placed on Gallo illustrate a "circumstance" in which the Fourth Amendment appropriately extends through the pretrial period.  The Court concludes that the more significant deprivation of liberty inherent in plaintiff's pretrial detention must also constitute such a circumstance.  In short, if Gallo was seized while he was released on bail, certainly plaintiff – an innocent witness – was seized while detained in county jail.  Thus, the Court concludes that it is clearly established that plaintiff's detention constituted a seizure under the Fourth Amendment.

### ii.    Detention As a Material Witness Requires Probable Cause

Under Third Circuit law, "a right is clearly established for purposes of qualified immunity when its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  Williams v. Bitner, 455 F.3d 186, 191 (3d Cir. 2006).  However, "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  Hope v. Pelzer, 536 U.S. 730, 741 (2002).  Finding a right to be clearly established does not require "binding precedent from this circuit," or from the Supreme Court.  Brown v. Muhlenberg Twp., 269 F.3d 205, 211-12 & n.4 (3d Cir. 2001); see Williams, 455 F.3d at 191.  In fact, the Third Circuit "routinely consider[s] decisions by other Courts of Appeals as

---

[8] However, the DiBella court distinguished its plaintiffs from those in Gallo, concluding that they were not seized under the Fourth Amendment because they were only issued a summons, were not arrested, did not post bail, were free to travel, and did not have to report to Pretrial Services.  407 F.3d at 603.

part of [its] 'clearly established' analysis when [it has] not yet addressed the right asserted by the plaintiff." Williams, 455 F.3d at 192-193 (citing Kopec v. Tate, 361 F.3d 772, 778 (3d Cir. 2004); Atkinson v. Taylor, 316 F.3d 257, 263 (3d Cir. 2003); Brown, 269 F.3d at 211-12 n.4).

From the body of case law directly confronting the issue of material witness detention, this Court concludes that it is clearly established that material witnesses have a constitutional right not to be detained without just cause. The Ninth Circuit stated recently that "material witness arrests are 'seizures' within the meaning of the Fourth Amendment and are therefore subject to its reasonableness requirement." al-Kidd v. Ashcroft, 580 F.3d 949, 965 (9th Cir. 2009). This conclusion rests a previous Ninth Circuit case, Bacon v. United States, 449 F.2d 933 (9th Cir. 1971), which determined that a material witness's "arrest and detention must be based on probable cause." Id. at 942. Moreover, the Sixth Circuit has held that material witnesses may only be detained based on probable cause and must be given a prompt hearing as to whether probable cause exists. Stone v. Holzberger, No. 92-3675, 1994 U.S. App. LEXIS 231, at *8 (6th Cir. Jan. 6, 1994) (finding it clearly established "that five days was an impermissible time to incarcerate a material witness prior to a probable cause hearing"); White v. Gerbitz, 892 F.2d 457, 463 (6th Cir. 1989) (concluding that plaintiff had suffered no violation of § 1983 rights despite his 288-day detention as a material witness because, in part, probable cause had been shown for his detention).

In her Motion, defendant avers that no "consensus of cases . . . make[s] clear that the requirements of the Fourth Amendment apply to incarcerated individuals after they have been arrested and have made their first appearance before a judicial officer." (Mot. 18.) This argument is without merit. Just one example to the contrary is a defendant's ability to challenge

the adequacy of a warrant through a <u>Franks</u> hearing, a procedure available to any criminal defendant who can present evidence that probable cause was based on "a false statement knowingly and intentionally, or with reckless disregard for the truth, [] included . . . in the warrant affidavit." <u>Franks v. Delaware</u>, 438 U.S. 154, 155-156 (1978). If defendant proves the allegation by a preponderance of the evidence at the hearing, the court looks to the affidavit's remaining content to determine if it satisfies probable cause; if none exists, the search warrant is voided. <u>Id.</u> at 156. As this procedure reveals, the Fourth Amendment's requirement of probable cause does not disappear once an initial showing of probable cause has been made. Rather, if evidence undermines the original finding of probable cause, a judicial officer must reevaluate the facts to determine whether sufficient probable cause remains.

Thus, for the reasons stated above, the Court concludes that plaintiff had a clearly established constitutional right to be free from detention without probable cause, and that this right extended beyond her first appearance before Judge Means.

> **b.    Plaintiff Alleges Facts Sufficient to Establish a Violation of Her Fourth Amendment Rights**

Next, the Court will address the first inquiry under <u>Pearson</u> – "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." 129 S. Ct. at 816 (internal citations omitted). In part, this inquiry requires the Court to determine whether defendant's conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow</u>, 457 U.S. at 818. For the reasons stated below, the Court concludes that plaintiff has alleged facts sufficient to establish a Fourth Amendment violation, and thus denies defendant's motion for summary judgment on the issue of qualified

immunity.

The Fourth Amendment probable cause framework is embedded in Rule 522 of the Pennsylvania Rules of Criminal Procedure, which requires that "adequate cause" be presented "for the court to conclude that the witness will fail to appear when required if not held in custody or released on bail." Pa. R. Crim. P. 522. Moreover, the Rule provides,

> [w]hen a material witness is to be detained, the court should impose the least restrictive means of assuring that witness'[s] presence, including the use of release on the witness'[s] own recognizance or release upon other nonmonetary conditions, such as electronic monitoring, especially when the witness has limited financial means to post monetary bail.

Id. "Adequate cause" depends on a number of factors, such as the nature of the witness's testimony, its relevance to the prosecution, the availability of other witnesses who can provide similar testimony, and the witness's likelihood of appearing at trial. (See generally Bail Hr'g Tr.) The judge must balance these factors against the witness's right to liberty to achieve the "least restrictive means" of ensuring the witness's appearance at trial.

In this case, the Overby trial schedule was an essential element of Judge Means's decision to detain plaintiff as a material witness under Pennsylvania Rule of Criminal Procedure 522. Judge Means conducted a hearing on plaintiff's material witness petition on January 27, 2005. At the hearing, he heard argument on the petition from defendant, and testimony from both plaintiff and Officer Michael Davis, the detective who arrested plaintiff pursuant to the warrant. (See Bail Hr'g Tr.) After determining that plaintiff was a material witness and a flight risk – but before setting bail – Judge Means asked defendant when the trial was to begin and how long it was to last. (Id. at 19:5-16.) Defendant answered that the trial was to begin on "Wednesday, the

17

2nd of February, six days from today," and that it would be "a ten-day trial at most." (Id. at 19:8-16.) Moreover, in his direction that defendant notify him once plaintiff testified or if defendant determined that plaintiff's testimony was no longer needed, Judge Means made clear that he wanted plaintiff detained only as long as necessary. (Id. at 22:1-11.) With the trial set to begin just six days from the hearing date, Judge Means determined that detaining plaintiff until she testified or the trial was concluded was the "least restrictive means" under Rule 522 of ensuring her appearance at the trial.

However, when the trial was continued from February 2, 2005, to May 25, 2005, the underlying facts informing Judge Means's "least restrictive means" determination changed. Judge Means addressed this point directly in ordering plaintiff's release on March 21, 2005. He explained, "when I put you in [detention], I was under the assumption that they were going to trial within a matter of days." (Tr., Mar. 21, 2005, Ex. 26 to Pl.'s Resp. 4:1-3.) Once Judge Means learned of the new trial date, the "least restrictive means" of ensuring plaintiff's appearance was no longer detention: rather, Judge Means ordered plaintiff to appear to testify in the Overby trial and stated that she would "face contempt of Court, which will be five months and 29 days" if she failed to appear. He also explained that while the Commonwealth "want[s] me to put you on house arrest," it would "take another two months to get a house arrest monitor." (Id. at 5:12-15.) He added, "[w]e need those monitors for people who have been convicted of crimes, not people who are unwilling witnesses." (Id. at 5: 15-18.) From this record, it is clear that the trial date was essential to Judge Means's conclusion that there was probable cause to detain plaintiff under Rule 522 on January 27, 2005. When the trial was continued, probable cause was destroyed.

In this case, defendant agrees, for purposes of the pending motion, that she never notified Judge Means of the trial continuance. He only discovered this fact when Public Defender Paul Conway petitioned the court for her release on March 21, 2005 – 47 days from the date that the Overby trial was to begin. While defendant avers that she is protected by qualified immunity because "it would have been objectively reasonable for [defendant] to believe that there was probable cause to support Plaintiff's continuing 'seizure' as a material witness," (Mot. 15), this argument is unavailing. Plaintiff has presented evidence sufficient to allow a jury to conclude that a reasonable prosecutor would have been aware of her duty to inform the judge of the status of any detained material witnesses.

This evidence includes deposition testimony: (1) that the duty to notify Judge Means of a trial continuance did not rest of the Sheriff's Office (see Dep. of Joseph Evans, Ex. 25 to Pl.'s Resp., at 80-81, 86-87), the Philadelphia prison system (see Dep. of Chris Thomas, Ex. 24 to Pl.'s Resp., at 13-14, 16-17), or the court administration (see Dep. of Joseph Lazalotti, Ex. 23 to Pl.'s Resp., at 13-14, 58); (2) from Public Defender Paul Conway that defendant "was the only one that ha[d] the information that [Judge Means] needed for him to make the decision" on plaintiff's continued detention (Dep. of Paul Conway, Ex. 15 to Pl.'s Resp., at 57); (3) from court personnel working in the chambers of Judges Poserina and Means that defendant's failure to notify Judge Means would not comport with their understanding of usual court practice and procedure (see Dep. of Nicholas Stampone, Ex. 20 to Pl.'s Resp., at 14; Dep. of Tari Williams, Ex. 18 to Pl.'s Resp., at 27-31); and (4) that following the release of Korvel Odd on January 13, 2005 – who was kept in custody for 37 days after the criminal case for which he was detained as a material witness was dismissed – assistant district attorneys were briefed on safeguards to

ensure that no material witnesses were detained improperly (<u>see</u> Dep. of Ann Ponterio, Ex. 27 to Pl.'s Resp., at 20, 69). These safeguards included centralizing procedures that required assistant district attorneys to seek a supervisor's approval of a material witness petition before presenting it to the judge; to present the petition to the judge assigned to the underlying criminal case; and to monitor the status of witnesses through the computer system to ensure that they were released promptly. (Dep. of Ann Ponterio 20; Dep. of Edward McCann 14-15, 49, 103.) Both Homicide Unit Chief Edward McCann and his assistant, Ann Ponterio, agreed that they "indicated to the unit" in January 2005 "that when a witness is in custody and a case is either over, or is continued, or is guilty, or anything that we must make sure that the witness is released from custody." (Dep. of Ann Ponterio 69; <u>see also</u> Dep. of Edward McCann 83.)

Defendant does not dispute any of the evidence presented by plaintiff, or offer any evidence to the contrary. Thus, the Court concludes that plaintiff has alleged facts sufficient to establish that defendant violated her Fourth Amendment rights by failing to notify Judge Means of the trial continuance and that a reasonable prosecutor would have known that those rights were clearly established constitutional rights.

### 2.    Plaintiff's Fourteenth Amendment Claim

In her Complaint, plaintiff alleges that defendant's conduct resulted in the deprivation of her liberty without due process of law in violation of the Fourteenth Amendment. (2d Am. Compl. ¶ 32.) In response, defendant avers that plaintiff cannot seek relief under the Fourteenth Amendment if her claim can be analyzed under the Fourth Amendment. (<u>See</u> Mot. 26-28.) The Court agrees. In <u>Albright v. Oliver</u>, 510 U.S. 266, 273, the Supreme Court ruled, "Where a

particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" Id. at 273 (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). Plaintiff's claim in this case is covered by the protections of the Fourth Amendment, as stated above. Thus, the Court treats plaintiff's claim as arising only under that "explicit textual source," and will not conduct an analysis under the Fourteenth Amendment.

> 3.    **Plaintiff's Argument That Defendant Was Obligated by Court Order to Inform Judge of Trial Continuance**

As a final matter on the topic of qualified immunity, the Court will briefly address plaintiff's argument that defendant's failure to notify Judge Means was a "ministerial act" in violation of a court order, which alone prevents defendant from enjoying the protections of qualified immunity. (Pl.'s Resp. 55-59.)

Plaintiff alleges that Judge Means twice directed defendant to inform him if the Overby case was continued – once in his robing room, before the hearing on plaintiff's material witness petition, and again in open court. (See id. at 11, 25-27.) As a result, and relying on Reitz v. County of Bucks, 125 F.3d 139 (3d Cir. 1997), plaintiff avers that qualified immunity is not available to a prosecutor who violates a court order. (Pl.'s Resp. 55-56.) The Reitz court concluded that a constitutional right was clearly established because the prosecutors "should have known" that their failure to comply promptly with a court order "would result in a violation of . . . legally established rights." Reitz, 125 F.3d at 147. Plaintiff also states, "[t]he Third Circuit has ruled that . . . defendant Smith had 'no decision[] to make' and that she was only required to

'perform a ministerial task[]'" (Pl.'s Resp. 58 (quoting Schneyder, 538 F.3d at 216)), and thus "qualified immunity doctrine d[oes] not apply where the defendant was performing non-discretionary, ministerial acts," (id. (citing Harlow, 457 U.S. at 818)).

Defendant argues that Judge Means never explicitly ordered defendant in open court to inform him if the Overby case was continued. (Def.'s Reply 23-24.) Moreover, defendant avers that any instruction to that effect in Judge Means's robing room was merely an off-the-record directive, not a formal court order, and that "there is no rule . . . that attorneys have a legal obligation to follow off-the-record judicial directives." (Id. 29.)

In view of the Court's ruling on qualified immunity, the Court need not decide whether Judge Means ordered defendant to notify him of any trial continuance. Regardless of whether a court order was issued, plaintiff had a clearly established Fourth Amendment right to be free from detention without probable cause, and plaintiff has alleged facts to establish a violation of this right.

### B.      Absolute Immunity

In her Motion, defendant argues that failing to notify Judge Means of the Overby trial continuance falls under the prosecutorial functions protected by absolute immunity, and that the Third Circuit's prior ruling on absolute immunity is not the law of the case. First, defendant posits that because the Third Circuit's opinion "was decided in the context of a motion to dismiss pursuant to [Federal Rule of Civil Procedure] 12(b)(6)," it is inapplicable to the instant motion for summary judgment. (Mot. 37.) Second, defendant contends that the Supreme Court's recent decision in Van de Kamp v. Goldstein, 129 S. Ct. 855 (2009), constitutes a change in the

controlling law.  (Id. at 38-40.)  Before addressing these arguments in detail, the Court outlines the law of the case doctrine.

### 1.    Law of the Case Doctrine

The law of the case doctrine provides that "once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case."  Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah, 114 F.3d 1513, 1520 (10th Cir. 1997); see also Arizona v. California, 460 U.S. 605, 618-19 (1983) ("Unlike the more precise requirements of res judicata, law of the case is an amorphous concept . . . posit[ing] that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

A significant corollary to the law of the case is the "mandate rule" – a "fundamental rule [that] binds every court to honor rulings in the case by superior courts."  Casey v. Planned Parenthood of Se. Pa., 14 F.3d 848, 856 (3d Cir. 1994).  Specifically, the Third Circuit has stated:

> It is axiomatic that on remand for further proceedings after
> decision by an appellate court, the trial court must proceed in
> accordance with the mandate and the law of the case as established
> on appeal. . . .  A trial court must implement both the letter and the
> spirit of the mandate, taking into account the appellate court's
> opinion and the circumstances it embraces.

Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 949 (3d Cir. 1985) (citations omitted).

The exceptions to the law of the case doctrine are "narrow," Pittsburg & Midway Coal

<u>Mining Co. v. Watchman</u>, 52 F.3d 1531, 1536 n.4 (10th Cir. 1995), reserved for instances

"'where there has been an intervening change in the law, where new evidence has become

available, or where reconsideration is necessary to prevent clear error or a manifest injustice,'" <u>In</u>

<u>re Engel</u>, 124 F.3d 567, 584 (3d Cir. 1997) (quoting <u>AL Tech Specialty Steel Corp. v. Allegheny</u>

<u>Int'l Credit Corp.</u>, 104 F.3d 601, 605 (3d Cir. 1997)).

**2.      Defendant's Argument That the Third Circuit's Opinion in <u>Schneyder</u> Does Not Control This Case Because of Its Different Procedural Posture Is Rejected**

Defendant first argues that the Third Circuit's opinion in <u>Schneyder</u> "does not constitute a

law-of-the-case bar" because it was decided at the motion to dismiss stage, which is governed by

a different standard than that applied to motions for summary judgment.  That is, since the Court

must refer to evidence beyond the pleadings on motions for summary judgment, and the Third

Circuit decided <u>Schneyder</u> taking the facts alleged in the pleadings as true, the Third Circuit's

opinion in <u>Schneyder</u> does not control.

The distinctions between motions to dismiss and motions for summary judgment are

well-established.  In <u>Behrens v. Pelletier</u>, 516 U.S. 299, 309 (1996), the Supreme Court

recognized that in with regard to questions of official immunity,

> the legally relevant factors . . . will be different on summary judgment than on an earlier motion to dismiss.  At that earlier stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for "objective legal reasonableness."  On summary judgment, however, the plaintiff can no longer rest on the pleadings . . . and the court looks to the evidence before it . . . .

<u>Id.</u>  However, although courts must address the evidence of the record when deciding motions

for summary judgment, applying this standard does not always create an exception to the law of the case doctrine. Rather, it depends on whether defendant has produced evidence in the motion for summary judgment that the "relevant facts are different" from those considered by the court in the motion to dismiss. Robbins v. Wilkie, 433 F.3d 755, 765 n.2 (10th Cir. 2006); see also Corliss v. Varner, 247 Fed. Appx. 353, 354 (3d Cir. 2007); Kimberlin v. Quinlan, 199 F.3d 496, 501 (D.C. Cir. 1999).

When examining the absolute immunity issue at the motion to dismiss stage, the Third Circuit assumed as true plaintiff's allegation that "Judge Means directed ADA Smith in open court, and again in his robing room, to notify him of any delays in the Overby case." Schneyder, 538 F.3d at 205. In the motion for summary judgment presently before the Court, however, defendant argues that Judge Means's directive was only an "instruction," and not a court order. Continuing, defendant states that the factual record presented to this Court on summary judgment is different from the facts that the Third Circuit considered in its Schneyder opinion, and renders the law of the case doctrine inapplicable.

Despite this difference, the Court concludes that "the relevant facts" have not changed between the motion to dismiss and the motion for summary judgment stages in this case. See Robbins, 433 F.3d at 765 n.2; Kimberlin, 199 F.3d at 501. On review of this Court's dismissal, the Third Circuit determined that absolute immunity did not apply to defendant because her reporting duty was "primarily administrative" and "required no advocacy." Schneyder, 538 F.3d at 213-14. That court's conclusion was based on a number of factors – (1) the timing of defendant's inaction "during [a] period of judicial inactivity," (2) Judge Means's instruction that defendant inform him of a continuance, and (3) Federal Rule of Criminal Procedure 46(h), which

25

obligates prosecutors to inform the court of the status of detained material witnesses on a biweekly basis – all of which counseled that defendant's duty was administrative.  Id.

Whether Judge Mean's directive was an instruction or a court order – a distinction on which this Court has not ruled – is insufficient to cause the Court to disregard the law of the case doctrine and the Third Circuit's prior ruling on absolute immunity.  The Third Circuit determined that a prosecutor's duty to notify a judge as to the continued detention of a material witness is administrative rather than advocative – and this remains true regardless whether Judge Means issued to defendant an "instruction" or an "order."  Thus, defendant's argument on this ground is rejected.

**3.    Defendant's Argument That <u>Van de Kamp v. Goldstein</u> Constitutes a Change in the Controlling Law Is Rejected**

Defendant also argues that the exception to the law of the case doctrine for an intervening change in the controlling law applies in the case.  Specifically, defendant contends that the Supreme Court's opinion in <u>Goldstein</u> – decided over five months after the Third Circuit's decision in <u>Schneyder</u> – clarified the scope of prosecutorial absolute immunity and stands for the proposition that certain administrative functions are protected by absolute immunity.  (Mot. 31.) According to defendant, the <u>Goldstein</u> court found that even though the prosecutorial tasks at issue in that case were "'a certain kind of administrative obligation,'" they were nonetheless protected by absolute immunity because they were "'directly connected with the conduct of a trial'" and "'require[d] legal knowledge and the exercise of related discretion.'" (Mot. 33 (quoting Goldstein, 129 S. Ct. at 862.))

26

Applying <u>Goldstein</u> to the facts of this case, defendant argues that:

> Notifying a judge about the status of a material witness is . . . the
> function of a lawyer prosecuting a criminal trial. . . . [I]n order the
> decide whether to notify Judge Means about the continuance,
> Smith first had to determine whether Judge Means had required
> such notice, and, if so, whether the burden was on her or Plaintiff's
> counsel to provide the notice, when it should be provided, and
> what form it should take. By definition, this determination
> involved legal knowledge . . . .

(Mot. 34.) However, the facts of <u>Goldstein</u> are distinguishable from those of the instant case.

While <u>Goldstein</u> addresses the absolute prosecutorial immunity doctrine, it does not disturb the

applicability of the Third Circuit's decision in <u>Schneyder</u> to this case.

<u>Goldstein</u> concerned the non-disclosure by prosecutors of impeachment material for

informants. 129 S. Ct. 855, 858 (2009). Specifically, the plaintiff in that case, Thomas

Goldstein, was convicted of murder, and "his conviction depended in critical part upon the

testimony of . . . a jailhouse informant." <u>Id.</u> at 859. Goldstein alleged that prosecutors in the Los

Angeles County District Attorney's Office failed to provide him with potential impeachment

information about this informant, which led to his erroneous conviction. <u>Id.</u> After filing a

habeas corpus petition, which was granted by the District Court and affirmed by the Court of

Appeals, the state released Goldstein. <u>Id.</u> Goldstein then brought suit under 42 U.S.C. § 1983,

alleging that the prosecution failed to disclose impeachment material under <u>Giglio v. United</u>

<u>States</u>, 405 U.S. 150 (1972), due to "(1) a failure properly to train prosecutors, (2) a failure

properly to supervise prosecutors, or (3) a failure to establish an information system containing

potential impeachment material about informants." <u>Goldstein</u>, 129 S. Ct. at 858-59.

Defendant correctly notes that the <u>Goldstein</u> court characterized the prosecution's failure

to train, supervise, and establish an information system as an "administrative activit[y]" or an "administrative procedure[]." Id. at 861; (Mot. 33). However, the Goldstein court also observed that these were "general methods" or "management tasks" that "rest[ed] in necessary part upon a consequent error by an individual prosecutor in the midst of trial . . . ." Goldstein, 129 S. Ct. at 863. Taken at the level of an individual prosecutor, the Goldstein court remarked, the underlying task of deciding whether to disclose impeachment material is "directly connected with the prosecutor's basic trial advocacy duties." Id. Indeed, it "necessarily require[s] legal knowledge and the exercise of related discretion." Id. at 862. Thus, the task of disclosing impeachment material was advocacy-oriented and entitled to absolute prosecutorial immunity whether conducted at the individual or managerial level.

By contrast, on the facts of the instant case, the Third Circuit in Schneyder conducted a "'meticulous analysis'" of defendant's obligation at an individual level and held that, even at this level of specificity, the underlying task of reporting to the judge about the status of a material witness was fundamentally an administrative duty. Schneyder v. Smith, 538 F.3d 202, 213 (3d Cir. 2008). The court based its conclusion that defendant's reporting duty was "primarily administrative" and "required no advocacy" on several factors, as discussed above.

Thus, the Court concludes that in Goldstein, the Supreme Court addressed a different type of prosecutorial task than that at issue in the instant case. The Goldstein opinion does not constitute a change in the controlling law on absolute prosecutorial immunity with respect to a prosecutor's duty to report to a judge on the status of a detained material witness. Consequently, Goldstein does not require this Court to sidestep the law of the case and disregard the Third Circuit's ruling in Schneyder. Defendant's argument on this ground is rejected.

### C.    Availability of Pretrial Appeal

In her Response to defendant's Motion, plaintiff requests that the Court consider as waived, or in the alternative certify as "frivolous," any pretrial appeal by the defendant on the issue of qualified immunity.  The Court denies plaintiff's request for the reasons stated below.

### 1.    Plaintiff's Argument That Defendant Has Waived an Appeal on Qualified Immunity is Rejected

In support of her position on this issue, plaintiff raises three arguments.  First, "[t]he fact that the defendant failed to raise the defense of qualified immunity in her Rule 12(b)(6) Motion to Dismiss and did not do so until after this Court and the Court of Appeals ruled on her defense of absolute immunity operates as a waiver of her right to raise it in a second pretrial appeal." (Pl.'s Resp. 69.)  Second, plaintiff avers that "second" pretrial appeals are authorized only when discovery produces additional facts unknown at the motion to dismiss stage; and third, that any further pretrial appeals will result in prejudice to her case.  (Id. at 69-71.)

The Court rejects plaintiff's arguments on this issue.  First, under the Federal Rules of Civil Procedure, the defense of immunity may be raised in the pleadings, by motion for judgment on the pleadings, or at trial.  Fed. R. Civ. P. 12(h)(2).  In this case, defendant plead both absolute and qualified immunity in her Answer as affirmative defenses.  (Ans. 5.)  Regardless of this fact, there is no legal requirement that defendant raise the defense of qualified immunity before the motion for summary judgment stage of the trial.  See, e.g., Guzman-Rivera v. Rivera-Cruz, 98 F.3d 664, 668 (1st Cir. 1996) ("[F]ailure to raise the issue [of qualified immunity] on the pleadings does not constitute waiver of the right to raise the defense post-discovery.")  Rather, defendant may raise qualified immunity on the pleadings in a motion to dismiss, on summary

judgment, or as an affirmative defense at trial.  Eddy v. V.I. Water & Power Auth., 256 F.3d 204, 210 n.3 (3d Cir. 2001).  Thus, defendant's assertion of a qualified immunity defense at this stage of the litigation is not inappropriate, and it does not waive defendant's ability appeal the issue.

Moreover, the Supreme Court directly rejected the "one-interlocutory-appeal rule" in Behrens v. Pelletier, 516 U.S. 299 (1996), concluding that "resolution of the immunity question may require more than one judiciously timed appeal, because the legally relevant factors . . . will be different on summary judgment than on an earlier motion to dismiss."  Id. at 309 (internal quotation marks omitted).  Plaintiff's second argument – that an additional pretrial appeal should be disallowed due to the precedent established by Behrens – is unjustified.  Behrens reinforces defendant's right to an immediate appeal once a court denies defendant's motion for summary judgment on the issue of immunity.  Id. at 311.  Thus, the Court concludes that under Behrens, a second pretrial appeal is not foreclosed.

Finally, plaintiff asserts that a second pretrial appeal will prejudice her case by causing "further loss of witness memory and further problems in locating important documents."  (Pl.'s Resp. 70.)  Plaintiff argues that "several essential witnesses have already testified that they do not recall certain key points"; "key documents can no longer be found"; and "[o]ne central witness no longer works for the City of Philadelphia and to date cannot be located."  (Id.)  The Behrens court did not address the issue of prejudice when it considered whether multiple pretrial appeals were permissible.

Other courts, however, have considered prejudice as a factor in determining whether defendant's late assertion of qualified immunity renders the defense waived.  See Eddy, 256 F.3d at 210 (instructing a district court to "inquire whether the defendants violated any scheduling

orders in raising the defense for the first time in their summary judgment motions, whether they delayed asserting the defense for tactical purposes or any improper reason, and most important, whether the delay prejudiced the plaintiff's case."); <u>Guzman-Rivera</u>, 98 F.3d at 667 ("Delay generated by claims of qualified immunity may work to the disadvantage of the plaintiff. Witnesses may become unavailable, memories may fade, attorneys fees accumulate, and deserving plaintiffs' recovery is delayed.").  In those cases, the First and Third Circuits recognized that a court may waive qualified immunity when necessary to protect against the "strategic use of the defense by defendants who stand to benefit from delay."  <u>Guzman-Rivera</u>, 98 F.3d at 668; <u>see</u> <u>Eddy</u>, 256 F.3d at 210.  In <u>Guzman-Rivera</u>, that delay was extreme despite ample opportunity to raise the issue earlier: defendant filed three pretrial, post-discovery summary judgment motions, and only raised the issue of qualified immunity in the last – which was filed only six days before trial was to begin.

In this case, there is no evidence of intentional or strategic delay.  Defendant asserted qualified immunity as an affirmative defense in her Answer, and requested and was granted leave to file a motion for summary judgment on the issue of qualified immunity in December 2008. The evidence of prejudice that plaintiff raises in her Response is too vague to convince the Court that defendant's right to a pretrial appeal should be restricted.  As the First Circuit observed in <u>Guzman-Rivera</u>, courts "must balance the need to protect public officials from frivolous suits with the need to have cases resolved expeditiously."  98 F.3d at 668.  Accordingly, for all of the reasons stated above, the Court rejects plaintiff's arguments that defendant has waived her right to a second pretrial appeal on the issue of immunity.

### 2. Plaintiff's Request That the Court Certify Any Appeal as Frivolous Is Rejected

As an alternative to considering defendant's right to a second pretrial waived, plaintiff asks that the Court certify as frivolous any appeal on the issue of immunity in order to retain jurisdiction. (Pl.'s Resp. 75.) Plaintiff cites to other circuit courts that have approved this approach to avoid abuse of the interlocutory appeal process. See Chuman v. Wright, 960 F.2d 104, 105 (9th Cir. 1992); Yates v. City of Cleveland, 941 F.2d 444, 448-49 (6th Cir. 1991); Stewart v. Donges, 915 F.2d 572, 576-77 (10th Cir. 1990); Apostol v. Gallion, 870 F.2d 1335, 1338-39 (7th Cir. 1989). Plaintiff also cites to Behrens, in which the Supreme Court acknowledged that because "a second appeal would tend to have the illegitimate purpose of delaying the proceedings[,] . . . if and when abuse does occur . . . it is well within the supervisory powers of the courts of appeals to establish summary procedures and calendars to weed out frivolous claims." 516 U.S. at 310.

However, the Third Circuit has not adopted procedures that would prohibit a second appeal, and this Court is unaware of any district court in the Third Circuit that has applied the approach for which plaintiff advocates. The Court rejects applying such a limitation under the facts of this case, and thus denies plaintiff's request that a second appeal on the issue of immunity be certified as frivolous.

## VI. Conclusion

For all of the foregoing reasons, the Court denies defendant's Second Amended Motion for Summary Judgment.

An appropriate order follows.